Joseph G. Dicks (SBN 127362)
Linda G. Workman (SBN 128621)
**DICKS & WORKMAN, A.P.C.**
750 B Street, Suite 2720
San Diego, California 92101
Telephone: 619.685.6800
Facsimile: 619.557.2735
Email: jdicks@dicks-workmanlaw.com

Attorneys for Plaintiff
North County Communications Corporation

FILED

2008 AUG 18  PM 4: 16

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____YMY_____DEPUTY

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

NORTH COUNTY COMMUNICATIONS CORPORATION, a California corporation,

Plaintiff,

v.

VERIZON SELECT SERVICES, INC, a Delaware corporation; VERIZON BUSINESS NETWORK SERVICES, INC., a Delaware corporation; VERIZON GLOBAL NETWORKS, INC., a Delaware Corporation; and VERIZON BUSINESS GLOBAL LLC dba VERIZON BUSINESS, MCI, SKYTEL, UUNET, TTI NATIONAL, INTERMEDIA, and TELECOM USA, A Delaware limited liability company,

Defendants.

Case No. '08 CV 1518 BEN BLM

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:**

**1. BREACH OF CONTRACT;**
**2. BREACH OF IMPLIED CONTRACT;**
**3. UNJUST ENRICHMENT;**
**4. QUANTUM MERUIT; and,**
**5. UNFAIR COMPETITION UNDER BUSINESS & PROFESSIONS CODE § 17200 et seq. (UNFAIR BUSINESS ACT OR PRACTICE)**

**Jury Trial Demanded**

Plaintiff NORTH COUNTY COMMUNICATIONS CORPORATION ("NCC" or "Plaintiff") alleges as follows:

## I.   NATURE OF THE ACTION

1.    This is an action brought by NCC against the above-captioned defendants for the defendants' intentional refusal to pay to NCC charges invoiced by

ORIGINAL



1  NCC and owed to NCC by the defendants for telecommunications originating and

2  terminating access services provided to defendants by NCC.

3  ## II.  JURISDICTION AND VENUE

4  2.    Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332

5  because the plaintiff is a resident of a state different from each and every defendant

6  and because the value of the matter in controversy exceeds $75,000.

7  3.    Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a

8  substantial part of the events or omissions on which the claims are based occurred in

9  the Southern District of California.

10  ## III. PARTIES

11  4.    Plaintiff NCC is and was at all times relevant to this Complaint a

12  California corporation doing business in the State of California, with its principal

13  offices located at 3802 Rosecrans Avenue, Suite 485, San Diego, California 92110.

14  5.    NCC is informed and believes that Defendant VERIZON SELECT

15  SERVICES, INC. ("VZSS") is and was at all times relevant to this Complaint a

16  Delaware corporation doing business in, among other jurisdictions in the United

17  States, the State of California, with its principal offices located at 1717 Arch Street,

18  21st Floor, Philadelphia, Pennsylvania 19103.

19  6.    NCC is informed and believes that Defendant VERIZON BUSINESS

20  NETWORK SERVICES, INC. ("VZBNS") is and was at all times relevant to this

21  Complaint a Delaware corporation doing business in, among other jurisdictions in the

22  United States, the State of California, with its principal offices located at One

23  Verizon Way, Basking Ridge, New Jersey 07920.

24  7.    NCC is informed and believes that Defendant VERIZON GLOBAL

25  NETWORKS, INC. ("VZGN") is and was at all times relevant to this Complaint a

26  Delaware corporation doing business in, among other jurisdictions in the United

27  States, the State of California, with its principal offices located at 1320 North Court

28  House Road, Arlington, Virginia 22201.

1    8.    NCC is informed and believes that Defendant VERIZON BUSINESS

2  GLOBAL LLC dba VERIZON BUSINESS, MCI, SKYTEL, UUNET, TTI

3  NATIONAL, INTERMEDIA, and TELECOM USA ("VZBG") is and was at all

4  times relevant to this Complaint a Delaware limited liability company doing business

5  in, among other jurisdictions in the United States, the State of California, with its

6  principal offices located at One Verizon Way, Basking Ridge, New Jersey 07920.

7    9.    VZSS, VZBNS, VZGN, and VZBG are referred to collectively as

8  "Verizon" or "Defendants."

9    10.    NCC is informed and believes and thereon alleges that, at all times

10  mentioned herein, each of the defendants sued herein was (i) the agent and employee

11  of each of the remaining defendants and at all times acted within the purpose and

12  scope of such agency and employment and/or (ii) received the benefits of the services

13  provided by NCC as described herein.

14    ## IV.  FACTUAL ALLEGATIONS

15    11.    NCC is a competitive local exchange carrier ("CLEC") that provides

16  local exchange, interexchange, exchange access, and other communications services

17  throughout the United States, including, but not limited to, California, Arizona,

18  Washington, Oregon, Illinois, and West Virginia.

19    12.    Defendants are providers of intraLATA and interLATA interexchange

20  communications services throughout the United States, including, but not limited to,

21  California, Arizona, Washington, Oregon, Illinois and West Virginia.

22    13.    In the context of telecommunications and this Complaint, access service

23  consists of (i) "originating" access, by which a call is transported from a caller's

24  premises over the network of a local exchange carrier ("LEC") to the interexchange

25  network, and (ii) "terminating" access, by which a call is transported from the

26  interexchange network over a LEC's network to the called party's premises.

27

28

14.    In accordance with telecommunications industry standard, originating and terminating access services are usage-based charges billed at rates based on minutes of use ("MOU") for the length of the call either originated or terminated.

15.    NCC provides to Defendants the originating access services described in paragraph 13, for both intrastate and interstate calls, when NCC transports NCC's end users' calls over the NCC network to Defendants' networks.

16.    NCC provides to Defendants the terminating access services described in paragraph 13, for both intrastate and interstate calls, when NCC transports to NCC's end users calls from Defendants' networks.

17.    NCC incurs costs in providing originating and terminating access services.

18.    NCC receives from AT&T, Verizon, and other carriers call detail records ("CDR") for intrastate and interstate calls that traverse, including originating from or terminating to, NCC's network.

19.    The CDR for each call touching the NCC network contains a list of fields identifying dozens of aspects about the particular call, including, but not limited to, whether the call in question is intrastate or interstate in jurisdiction and whether the call was originated or terminated on the NCC network.

20.    The CDR contains a field for the carrier identification code ("CIC"), which specifically identifies the entity on whose interexchange network the call in question traversed.

21.    The CIC tells NCC which interexchange entity is responsible for access charges related to each call originated or terminated by NCC.

22.    Defendants possess CICs specific to Defendants, including, but not limited to CIC numbers 222, 555, and 5483.

23.    When Defendants' CICs appear in the CDR, NCC knows that the call in question came from or was bound for Defendants' interexchange networks and that

1    Defendants are the entities to be billed by NCC for the access charges related to that

2    particular call.

3        24.    Defendants send intrastate traffic to and receive intrastate traffic from

4    NCC's network in the absence of an interconnection agreement between the parties.

5        25.    NCC has on file with the state utility regulatory agencies publicly-

6    available tariffs that set forth NCC's per-MOU rate for originating and terminating

7    access services for intrastate interexchange calls.  Copies of the applicable state tariff

8    provisions are appended hereto at Exhibit A.

9        26.    NCC has on file the Federal Communications Commission ("FCC") a

10   publicly-available tariff that sets forth NCC's per-MOU rate for originating and

11   terminating access services for interstate interexchange calls.  A copy of the

12   applicable federal tariff provisions is appended hereto at Exhibit B.

13       27.    Defendants send interstate traffic to and receive interstate traffic from

14   NCC's network in the absence of an interconnection agreement.

15       28.    In or around October 1999, NCC, through its billing agent, Mid-America

16   Computer Corporation ("MACC"), began sending monthly bills to Defendants for

17   intrastate and interstate interexchange access services provided by NCC pursuant to

18   and in accordance with NCC's applicable state and federal tariffs where CDR

19   information identifies Defendants' CICs – i.e., 222, 555, and 5483 – for the calls in

20   question.

21       29.    Defendants paid in full all of NCC's access service invoices until the

22   August 2006 invoices.

23       30.    Beginning with the August 2006 invoices, Defendants have not paid any

24   of NCC's invoices for intrastate and interstate interexchange access services.

25       31.    Since August 2006, NCC, through its billing agent, MACC, has invoiced

26   Defendants in excess of $1,300,000 for intrastate and interstate interexchange access

27   services.

28

32.    NCC is informed and believes that Defendants have received each and every access service invoice sent to it by NCC and NCC's billing agent, MACC.

## COUNT ONE

**Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing**

33.    NCC realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 32 of this Complaint, as though set forth in full herein.

34.    NCC's state and federal tariffs operate as a contract between NCC and any entity that uses the services described in those tariffs.

35.    Defendants used the intrastate and interstate interexchange access services provided by NCC and set forth in the NCC federal and state tariffs.

36.    Defendants received monthly invoices from NCC, through NCC's billing agent, MACC, for such access services and were aware that they were using NCC's intrastate and interstate interexchange access services.

37.    Under the tariffs and resultant agreements, Defendants were required to make certain performances, including, but not limited to, making payments to NCC for the use of NCC's intrastate and interstate interexchange access services.

38.    Defendants breached the agreements by failing to make payments to NCC after using and being billed for NCC's intrastate and interstate interexchange access services.

39.    NCC has performed all of the conditions, covenants and promises required of it to be performed in accordance with the terms and conditions of the agreements by providing the aforementioned intrastate and interstate interexchange access services to Defendants.

40.    As a direct result of Defendants' breach of contract, NCC has suffered substantial damages (including having been compelled to retain an attorney to

1    prosecute this action, thereby incurring attorneys' fees and costs), which exceed

2    $1,300,000, the total of which will be proved at trial.

3    WHEREFORE, Plaintiff NCC prays for the relief set forth below.

### COUNT TWO

**Breach of Implied Contract**

6    41.    NCC realleges and incorporates by reference each and every allegation

7    contained in paragraphs 1 through 40 of this Complaint, as though set forth in full

8    herein.

9    42.    Defendants used the access services provided by NCC by receiving

10    calls from and transmitting calls to NCC's local exchange switching facilities over

11    Defendants' interexchange network(s).

12    43.    Defendants received monthly invoices from NCC, through NCC's

13    billing agent MACC, for intrastate and interstate interexchange access services and

14    were aware that they were using NCC's intrastate and interstate interexchange access

15    services.

16    44.    Defendants' interexchange network transmits interexchange traffic via

17    local exchange switching facilities for the provision of intrastate and interstate

18    telecommunication services.

19    45.    Under the implied obligation based on Defendants' use of NCC's

20    network, Defendants were required to make certain performances, including but not

21    limited to, making payments to NCC for the use of NCC's intrastate and interstate

22    interexchange access services.

23    46.    Defendants breached their implied obligation to NCC by failing to make

24    payments to NCC after using and being billed for NCC's intrastate and interstate

25    interexchange access services.

26    47.    NCC has performed all of the conditions, covenants and promises

27    required of it to be performed in accordance with the terms and conditions of the

28

1  implied agreements by providing the aforementioned intrastate and interstate

2  interexchange access services to Defendants.

3       48.    As a direct result of the Defendants' breach of the implied obligations to

4  NCC, Plaintiff has suffered substantial damages (including having been compelled to

5  retain an attorney to prosecute this action, thereby incurring attorneys' fees and

6  costs), which exceed $1,300,000, the total of which will be proved at trial.

7       WHEREFORE, Plaintiff NCC prays for the relief set forth below.

8  **COUNT THREE**

9  **Unjust Enrichment**

10       49.    NCC realleges and incorporates by reference each and every allegation

11  contained in paragraphs 1 through 48 of this Complaint, as though set forth in full

12  herein.

13       50.    Defendants have received a significant financial benefit by using NCC's

14  intrastate and interstate interexchange access services.

15       51.    NCC conferred that benefit on Defendants with the expectation that

16  NCC would receive compensation for providing the aforementioned intrastate and

17  interstate interexchange access services to Defendants.

18       52.    Defendants have retained, at the expense of NCC, a significant financial

19  benefit from the intrastate and interstate access services provided by NCC by failing

20  to pay NCC for the intrastate and interstate access services NCC provided to

21  Defendants.

22       53.    Under equitable principles, it would be unjust and unconscionable for

23  Defendants to retain the financial benefit conferred on them by NCC's providing

24  intrastate and interstate access services, and as such, Defendants should be required

25  to pay NCC for the intrastate and interstate access services NCC provided, plus

26  interest.

27       WHEREFORE, Plaintiff NCC prays for the relief set forth below.

28

# COUNT FOUR

## Quantum Meruit

54.    Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 53 of this Complaint, as though set forth in full herein.

55.    In order to maintain the ubiquity and seamlessness of the telecommunications system, NCC is required (i) to terminate calls that originate on Defendants' networks and that are intended for NCC's end users; and (ii) to originate and pass, via NCC's network to Defendants' networks, calls that are placed by NCC's end users and that are intended for the users of Defendants' networks.

56.    For purposes of this cause of action, as of no later than June 2006, and continuing through the present, NCC has terminated, and continues to terminate, calls that have originated, and continue to originate, on Defendants' networks and that are intended for NCC's end users.

57.    For purposes of this cause of action, since about October 1999, and continuing through the present, NCC has originated and passed, and continues to originate and pass, via NCC's network to Defendants' networks, calls placed by NCC's end users and intended for the users of Defendants' networks.

58.    NCC has incurred and continues to incur costs in originating and terminating such traffic.

59.    Defendants knowingly accepted, used, enjoyed and benefitted from the access services provided by NCC.

60.    NCC sent invoices to Defendants reflecting the reasonable value of the access services provided.

61.    It would be unjust to allow Defendants to have the benefit of NCC's access services without paying reasonable compensation for those benefits, and Defendants should be so ordered to pay compensation to NCC.

WHEREFORE, Plaintiff NCC prays for the relief set forth below.

## COUNT FIVE

**Unfair Competition under Business & Professions Code § 17200 *et seq.* –**

**Unfair Business Act or Practice**

62.    NCC realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 61 of this Complaint, as though set forth in full herein.

63.    NCC is informed and believes and on that basis alleges that Defendants make it a practice to refuse to pay access charges to NCC in order to decrease Defendants' cost of business vis-à-vis other interexchange network providers, including long distance service companies.

64.    NCC is informed and believes and on that basis alleges that Defendants pay access charges to some local exchange carriers, including, but not limited to, AT&T, but specifically refuse to pay access charges billed by CLECs and smaller carriers like NCC because those CLECs and smaller carriers do not have the ability to block traffic to and from Defendants' network or otherwise disconnect Defendants' services.

65.    NCC is informed and believes and on that basis alleges that Defendants refuse to pay NCC's access charge invoices in order to cause financial harm to NCC.

66.    NCC is informed and believes on that basis alleges that Defendants require NCC and other smaller carriers to pursue the significant expense (in time, money and other resources) of litigation to recover access charges due and owing.

67.    NCC is entitled to payment for providing access services to Defendants.

68.    NCC is informed and believes and on that basis alleges that Defendants' systematic and willful refusal to pay NCC for access services provided by NCC, as described herein, constitutes unlawful, unfair, and/or fraudulent business practices in violation of California common law and California Business & Professions Code Section 17200 *et seq.*

69.     As a direct and proximate result of Defendants' wrongful acts, NCC has suffered and will continue to suffer substantial pecuniary losses and irreparable injury to its business.

70.     By reason of such wrongful acts, NCC is, was, and will be deprived of profits and benefits, and Defendants have wrongfully obtained such profits and benefits in an amount to conform to proof at trial, but in no event less than $1,300,000.

71.     By reason of such wrongful acts, NCC is, was, and will be deprived of profits and benefits, and Defendants should be enjoined from engaging in such wrongful acts in the future.

WHEREFORE, Plaintiff NCC prays for the relief set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against all Defendants as follows:

1.     For compensatory damages according to proof;

2.     For prejudgment interest;

3.     For injunctive relief for past, present and future unfair competition;

4.     For attorneys' fees and costs of suit; and

5.     For such other and further relief as the court may deem just and proper.


Dated:   August 18, 2008                    DICKS & WORKMAN, APC



                                            Joseph G. Dicks
                                            Attorneys for
                                            North County Communications
                                            Corporation

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

NORTH COUNTY COMMUNICATIONS CORPORATION, a
California corporation

**DEFENDANTS**

See "Attachment A."

**(b)** County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Joseph G. Dicks, Dicks & Workman, APC, 750 B Street, Suite
2720, San Diego, CA   92101, (619) 685-6800

Attorneys (If Known)

'08 CV 1518 BEN BLM

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332

Brief description of cause:
Amounts due for Telecommunications services

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):  JUDGE _____  DOCKET NUMBER _____

DATE
08/18/2008

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #  154185   AMOUNT  $350   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

TAC  8/18/08

**ORIGINAL**

**ATTACHMENT A**
**TO CIVIL COVER SHEET**

VERIZON SELECT SERVICES, INC., a Delaware corporation; VERIZON

BUSINESS NETWORK SERVICES, INC., a Delaware corporation; VERIZON

GLOBAL NETWORKS, INC., a Delaware corporation; and VERIZON

BUSINESS GLOBAL LLC dba VERIZON BUSINESS, MCI, SKYTEL, UUNET,

TTI NATIONAL, INTERMEDIA, and TELECOM USA, a Delaware limited

liability company

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 154185    – TC**

**August 18, 2008
16:16:54**

**Photocopies**
Qty....:    4 @ $0.50
Amount.:                    $2.00 CK
Check#.: BC042341

**Civ Fil Non-Pris**
USAO #.: 08CV1518
Judge..: ROGER T BENITEZ
Amount.:                    $350.00 CK
Check#.: BC042341


**Total-> $352.00**


FROM: NO. COUNTY COMMUNICATIONS
        VS
      VERIZON SELECT, ET AL.