FILED
2010 FEB -9 AM 9:13
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

NORTH COUNTY COMMUNICATIONS CORP., a California corporation,

Plaintiff,

vs.

VERIZON GLOBAL NETWORKS, INC., a Delaware corporation; et al.,

Defendants.

CASE NO. 08-cv-01518 BEN-WMc

ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM

[Docket No. 54]

Before this Court is Plaintiff North County Communications Corporation's ("North County's") Motion to Dismiss ("Motion") the First Amended Counterclaim by Defendants Verizon Global Networks, Inc., MCI Communications Services, Inc., dba Verizon Business, and MCIMetro Access Transmission Services LLC (collectively, "Verizon"). For the reasons set forth below, the Motion is **DENIED IN PART AND GRANTED IN PART**.

## BACKGROUND

Switched access charges are charges incurred when a long distance carrier, such as Verizon, uses the local network equipment and facilities of a local telephone company, such as North County, to connect a long distance call. More specifically, switched access charges are incurred when a local exchange carrier ("LEC") such as North County originates or terminates a call for an interstate exchange carrier ("IXC") such as Verizon. The underlying action arises from Verizon's alleged

failure to pay switched access charges that North County claims are due and owing pursuant to tariffs, *i.e.*, rate schedules, filed with the Federal Communications Commission ("FCC") and applicable state utilities commissions and pursuant to FCC Order No. 01-146 released on April 27, 2001.

On August 18, 2008, North County initiated this lawsuit against Verizon. (Docket No. 1.) The operative complaint is the Second Amended Complaint filed on June 26, 2009. (Docket No. 47.) The Second Amended Complaint seeks, among other things, to recover switched access charges allegedly owed by Verizon from 2006 to present, totaling in excess of $1,300,000. (Second Am. Compl., ¶¶ 29-30.)

On July 1, 2009, Verizon filed a First Amended Counterclaim against North County, alleging among other things: North County's tariff was invalid after 2004 (First Am. Countercl. ("FACC"), ¶¶ 21-22); certain rates exceeded the cap set by FCC regulations (FACC, ¶¶ 23-24); switched access charges are not recoverable for service rendered to chat-line providers (*i.e.*, high volume operators similar to conference bridges) (FACC, ¶¶ 28-43); North County's alleged service to chat-line providers constitutes a breach of contract with Verizon's affiliate (FACC, ¶¶ 44-46); and North County cannot recover switched access charges for service in West Virginia because North County's affiliate in that state lacks the proper license (FACC, ¶¶ 47-50).

Relying on these allegations, Verizon claims North County's activities constitute: (1) an unlawful imposition of charges for untariffed services, in violation of 47 U.S.C. §§ 203, 206 and 207 (COUNT I); (2) unfair and unreasonable rates, in violation of 47 U.S.C. §§ 201(b), 206 and 207 (COUNT II); (3) unfair and unreasonable practices, in violation of 47 U.S.C. §§ 201(b), 206 and 207 (COUNT III); (4) unjust enrichment (COUNT IV); and (5) breach of contract (COUNT V). Verizon also seeks declaratory relief (COUNT VI).

On July 21, 2009, North County filed a Motion to Dismiss the First Amended Counterclaim. (Docket No. 54.) Verizon filed an opposition, and North County filed a reply.

## MOTIONS TO DISMISS

North County moves to dismiss the First Amended Counterclaim in its entirety based on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). North County also moves for a more definite statement under Federal Rule of Civil Procedure 12(e).

**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (FRCP 12(b)(1))**

Federal Rule of Civil Procedure ("FRCP") 12(b)(1) provides a court may dismiss a complaint for lack of subject matter jurisdiction. Fed. R.Civ. P. 12(b)(1). When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court should, as this Court does here, consider the Rule 12(b)(1) motion first. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 84 (1998); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 575 (1999).

North County argues Verizon's counterclaims are not specific to North County but rather seek to impose uniform regulation on all similarly-situated local telephone companies and, therefore, invoke the primary jurisdiction doctrine. Pursuant to the primary jurisdiction doctrine, North County argues jurisdiction more properly lies with the FCC or state utilities commissions. (Mot., 18:23-27.)

The primary jurisdiction doctrine is "a doctrine specifically applicable to claims... that contain some issue within the special competence of an administrative agency" such that the claims should be referred to that agency. *Reiter v. Cooper*, 507 U.S. 258, 268 (1993); *see also Brown v. MCI Worldcom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002). "[P]rimary jurisdiction is properly invoked when a case presents a far-reaching question that requires expertise or uniformity in administration." *Brown*, 277 F.3d at 1172 (internal citation omitted). However, the primary jurisdiction doctrine "does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." *Reiter*, 507 U.S. at 268-69.

As noted by North County, determining whether the primary jurisdiction doctrine applies requires a two prong inquiry into, first, the desirability of national uniformity of regulation and, second, whether the agency with specialized knowledge would be better equipped to determine the issues in the case. *Great Northern Ry. Co. v. Merchants' Elevator Co.*, 259 U.S. 285, 290-91 (1922).

Here, the Court finds Verizon's counterclaims do not implicate concern for uniformity in FCC or state utilities regulations, nor does determination of the counterclaims require resorting to the specialized knowledge of those agencies. Rather, the claims can be resolved through a fact-specific inquiry into North County's tariffs and FCC and related regulations, as applied in this case. Additionally, Verizon's claims are within the conventional experience of district courts, including this

Court, and the guidance provided by relevant FCC decisions will minimize the risk, if any, of inconsistent rulings. Furthermore, the Court finds that adjudicating Verizon's claims in this court will promote judicial economy as the claims substantially overlap with North County's claims in the underlying action. Accordingly, the Court finds it has proper jurisdiction and the primary jurisdiction doctrine does not compel dismissing the case under FRCP 12(b)(1).

North County's motion to dismiss for lack of subject matter jurisdiction is, therefore, **DENIED**. For the same reasons set forth above, North County's request to stay this action pending resolution of the First Amended Counterclaim by the FCC or state utilities commissions is also **DENIED**.

**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**(FRCP 12(b)(6))**

Under FRCP 12(b)(6), dismissal is appropriate if the complaint fails to state a facially plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). That is to say that the complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of the claim. (*Id.* at 556.)

As explained below, the Court **DENIES** North County's FRCP 12(b)(6) motion as to COUNTS I, II, III, IV and VI, and **GRANTS** North County's FRCP 12(b)(6) motion as to COUNT V.

**1.** ***COUNT I: Unlawful Imposition of Charges in Violation of 47 U.S.C. §§ 203, 206 and 207***

Verizon alleges North County imposed or attempted to impose charges for services outside the terms of its tariff, in violation of 47 U.S.C. § 203. Section 203 provides that every carrier must file and keep available for public inspection "schedules showing all charges." 47 U.S.C. § 203(a). Section 203 further provides, "no carrier shall... charge, demand, collect, or receive a greater or less or different compensation..." than that listed in its schedules or "enforce any classifications, regulations, or practices affecting such charges, except as specified in such schedule." 47 U.S.C. § 203(c). In sum, Section 203 prohibits an LEC such as North County from charging for untariffed services or from charging excessive rates.

To support its claim under Section 203, Verizon alleges: (a) outside of the Leaf River territory in Leaf River, Illinois, North County's tariff expired on June 20, 2004, after which North County was not permitted to charge for switched access service; (b) within the Leaf River territory, North County's tariff exceeded the cap permitted by FCC and related regulations;[1] (c) North County impermissibly charged for service in West Virginia; and (d) North County impermissibly charged for switched access service rendered to chat-line providers.

For a cause of action to survive a motion to dismiss, only one of these allegations must state a cognizable legal theory upon which relief may be granted. *Twombly*, 550 U.S. at 555-57. Because the Court finds that Verizon's claim of excessive rates for the Leaf River territory states a claim upon which relief may be granted, as detailed below, the Court **DENIES** the Motion as to COUNT I. The other bases of the Motion with respect to COUNT I are, thereby, rendered moot.

A. *Statute of Limitations*

Verizon alleges North County's rate for the Leaf River territory from 2005 to November 2006 exceeded the benchmark set by FCC and related regulations and, therefore, Verizon is entitled to an overcharge refund for that time period. (FACC, ¶¶ 23-26.) North County argues Verizon's claim is time-barred because it is subject to a two-year statute of limitations and Verizon did not assert its refund claim until April 9, 2009, when it filed its initial counterclaim in this action. Verizon does not dispute the applicable limitations period is two years, but rather argues its counterclaims are complusory to North County's claims in the underlying action; therefore, the limitations period was tolled when North County filed its complaint in August 2008. The Court agrees.

Federal Rule of Civil Procedure 13(a) defines "compulsory counterclaim" as a claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require adding another party over whom the court cannot acquire jurisdiction." Fed.R.Civ.P. 13(a)(1). Here, Verizon seeks reimbursement for alleged overcharges concerning the same service for which North County seeks compensation in the underlying action. Verizon's

---

[1] At this time, Verizon does not appear to dispute that North County has a valid tariff for this territory.

claim does not require adding another party, let alone another party for whom this Court lacks jurisdiction. Therefore, the Court finds that Verizon's claim is a "compulsory counterclaim" for purposes of FRCP 13(a).

The issue then becomes whether a compulsory counterclaim tolls the statute of limitations. The general statute of limitations to recover overcharges, such as those sought here, is two years. 47 U.S.C. § 415(c). Courts have not clearly resolved the question of whether this period is tolled for compulsory counterclaims asserted in response to complaint, but asserted after the limitations period has expired. The Ninth Circuit, specifically, has not ruled on this issue. The Court notes, however, that the majority of other courts, including one court sitting in the Ninth Circuit, has found that tolling applies. *See Burlington Indus., Inc. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982), *cert. denied* 461 U.S. 914; *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 570 (10th Cir. 1980); *Azada v. Carson*, 252 F.Supp. 988, 989 (D. Haw. 1966). Pursuant to these cases, a compulsory counterclaim is timely if the underlying complaint is filed within the applicable limitations period and the compulsory counterclaim is filed within the applicable response deadline to that complaint. *Azada*, 252 F.Supp. at 989. The Court finds these cases persuasive, as they further the goal of adjudicating all disputes between the parties in one action and providing complete relief to the defendant who has been brought involuntarily into court. *Union Paving Co. v. Downer Corp.*, 276 F.2d 468, 470 (9th Cir. 1960); *Alaska Barite Co. v. Freighters, Inc.*, 54 F.R.D. 192, 195-96 (N.D. Cal. 1972).

Here, the Court notes North County filed its initial complaint in August 2008, *i.e.*, before Verizon's two-year statute of limitations expired. Additionally, Verizon filed its counterclaim within the applicable response deadline. Therefore, pursuant to the above legal authority, the Court finds that Verizon's counterclaim is timely.

B. *"Deemed Lawful" Status*

North County argues that Verizon's claim for overcharges is also barred because North County's rate for the Leaf River territory was "deemed lawful" pursuant to 47 U.S.C. § 204(a)(3). North County argues the "deemed lawful" status of its rate precludes Verizon from contesting its rate in the Leaf River territory. (Mot., pg. 13.) Because the Court finds North County did not

follow the procedure necessary to obtain "deemed lawful" status, the Court disagrees.

To obtain "deemed lawful" status, an LEC such as North County must follow the streamlined procedure set forth in 47 U.S.C. § 204(a)(3). Under FCC regulations, "LECs may, but are not required to, file tariffs on a streamlined basis." Report and Order, *Implementation of Section 402(b)(1)(A) of the Telecommunications Act of 1996*, 12 FCC Rcd 2170, 2189 (1997). "LEC tariffs filed outside the scope of section 204(a)(3) shall not be 'deemed lawful' because, by definition, they are not filed pursuant to that section and are not, therefore, accorded the treatment provided for in that section." (*Id.*)

To elect the streamlined procedure, an LEC must file its tariff either seven (7) or fifteen (15) days before its effective date. 47 U.S.C. § 204(a)(3). The seven days' notice provision applies in the case of a reduction in rates; the fifteen days' notice provision applies in the case of an increase in rates. (*Id.*) The purpose of these notice provisions is to allow the FCC sufficient time to challenge the LEC's rates, if necessary, before the rates are deemed lawful. (*Id.*; Report and Order, *Implementation of Section 402(b)(1)(A) of the Telecommunications Act of 1996*, 12 FCC Rcd 2170, 2189 (1997).) However, as noted, an LEC is not required to follow this procedure and may, under certain circumstances, file a tariff with even one day's notice. (*Id.*; *see also* 47 C.F.R. § 61.23(c))

Here, North County's tariff was issued January 14, 2003 and became effective January 17, 2003, *i.e.*, three days later. (Mot., Ex. A.) Thus, North County did not elect the streamlined procedure and, therefore, cannot avail itself of "deemed lawful" status. As such, Verizon is not precluded from challenging North County's switched access rate for the Leaf River territory.

In light of the above, the Court **DENIES** the Motion as to COUNT I.

2. ***COUNT II: Unfair and Unreasonable Rates in Violation of 47 U.S.C. §§ 201(b), 206 and 207***

Verizon alleges North County imposed unfair and unreasonable rates, in violation of 47 U.S.C. § 201(b). Section 201(b) provides,

> All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or

regulation that is unjust and unreasonable is declared to be unlawful.

47 U.S.C. § 201(b).

To support its claim, Verizon relies on the same allegations set forth above for COUNT I. As noted, to survive a motion to dismiss, only one of these allegations must state a cognizable legal theory upon which relief may be granted. *Newman v. Universal Pictures*, 813 F.2d 1519, 1521-22 (9th Cir. 1987). Therefore, for the same reasons set forth above regarding Verizon's claim for overcharges in the Leaf River territory, here too, the Court finds that COUNT II is legally sufficient to survive dismissal at this stage. Accordingly, the Court **DENIES** the Motion as to COUNT II.

3. ***COUNT III: Unfair and Unreasonable Practices in Violation of 47 U.S.C. §§ 201(b), 206 and 207***

Verizon alleges a second violation of Section 201(b) based specifically on North County's service to chat-line providers (*i.e.*, high volume operators similar to conference bridges). (FACC, ¶ 63.) Verizon alleges that service to chat-line providers does not constitute switched access service because the traffic does not terminate with the chat-line provider, but rather flows through and terminates elsewhere. As such, Verizon alleges it is unlawful for North County to charge switched access rates for this service.

The seminal case on this issue is *Qwest Communications Corp. v. Farmers and Merchants Mutual Telephone Company*, 22 F.C.C.R. 17973 (2007). Similar to Verizon in this case, the IXC in *Farmers* argued that traffic delivered to conference calling companies did not terminate in the LEC's exchange and, therefore, did not constitute switched access service for which the LEC may charge switched access rates. The FCC initially rejected this argument, finding that when users of a conference calling service make a call, that call terminates at the conference bridge because the users are connected together at that point. (*Id.* at 17985-87.) The FCC concluded that, therefore, the call does not flow through to the end-user, but rather the conference bridge itself is the end-user. (*Id.*) The FCC's decision was based on the facts developed in that case and, in particular, was based "entirely on [the LEC's] then-uncontested averment that the [conference calling] companies 'subscribed to [LEC's] interstate service... and were billed the federal subscriber line charge." *Qwest Communications Corp. v. Farmers and Merchants Mutual Telephone Company*,

FCC No. 09-103, 2009 WL 4073944, at*4 (F.C.C. November 25, 2009).

However, on November 25, 2009, while Verizon's Motion was pending in this Court, the FCC released an order reconsidering and reversing its holding in *Farmers*. (*Id.*) The FCC reversed its prior decision, finding that based on recent factual development concerning backdating and the true relationship between the conference calling companies and the LEC, the conference calling companies were not end-users for purposes of switched access services. (I.) Therefore, the LEC was liable under Section 201(b) for unlawfully charging switched access rates for services rendered to these companies. (*Id.*)

It is clear from the revised order in *Farmers* that the determination of whether chat-line providers are end-users is fact-driven. Access stimulation or "traffic pumping," such as the conference bridges in *Farmers* or the chat-lines in this case, are not per se valid or per se violative of Section 201(b). *See, e.g., AT&T Corp. v. Jefferson Tel. Co.*, 16 F.C.C.R. 16130, 16135-36 (2001) (holding that a revenue sharing argument based on an LEC's chat-line relationship with an end-user was not unlawful and did not violate Section 201(b)). Rather, as applied here, additional facts must be developed to determine the relationship, if any, between North County and the alleged chat-line providers. Other courts have likewise concluded, as the Court does here, that determination of this issue is fact-intensive. *Northern Valley Communications, LLC v. MCI Communications Services, Inc.*, Nos. CIV 07-1016 and 07-4106, 2008 WL 2627519, at *5 (D.S.D. June 26, 2008) (finding that a conference calling company may constitute an end-user, but further fact development is necessary); *All American Tel. Co. v. AT&T, Inc.*, No. 07 Civ. 861, 2009 WL 691325 (S.D.N.Y. March 16, 2009) (noting these issues "cannot be resolved on the pleadings and require a more developed record.").

Accordingly, the Court finds FRCP 12(b)(6) dismissal is not proper at this stage and, thus, **DENIES** the Motion as to COUNT III.

**4. *COUNT IV: Unjust Enrichment***

Verizon alleges North County was unjustly enriched by receiving switched access fees for switched access service it did not provide. Similar to COUNT III above, COUNT IV is based, at least in part, on the purported service North County provides to chat-line providers. (FACC, ¶¶ 67-

29; Opp., pg. 16.) Unlike COUNT III, COUNT IV is based on state law.

As noted, Verizon alleges these services do not constitute terminating traffic and, thus, do not constitute switched access service. North County contends Verizon's state law claims, including this one, are barred by the filed tariff doctrine which provides that all persons are charged with constructive notice of tariffs duly filed with the appropriate agency, and that the filing of the tariff precludes state law actions on the rates set forth in those tariffs. *AT&T v. Central Office Tel. Inc.*, 524 U.S. 214, 222-26 (1998). The Court disagrees.

By its terms, the filed tariff doctrine merely restricts Verizon's ability to challenge the validity of North County's tariffs; however, the LECs, including North County in this case, still have the burden of proving that their services were provided and meet the requirements of the applicable tariffs. *Id.*; *Advamtel LLC v. AT&T Corp.*, 118 F.Supp.2d 680, 683 (E.D. Va. 2000). As noted above, this issue requires further fact development and cannot be resolved at this stage of the case because it requires the Court to review evidence relating to the relationship between North County and the chat-line providers and determine whether the services fit the specific terms of North County's tariff. Accordingly, the Court cannot find that Verizon's claim is barred by the filed tariff doctrine at this time. As such, the Motion is **DENIED** as to COUNT IV.

**5. *COUNT V: Breach of Contract***

COUNT V is also based on state law. Verizon alleges North County entered into a contract with "an affiliate of Verizon" and North County's activities violated the obligations set forth therein. (FACC, ¶¶ 72-76.)

To sufficiently plead breach of contract under California law, the claimant must plead, among other things, the contract either "by its terms, set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference, or by its legal effect." *McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1489 (2006). "In order to plead a contract by its legal effect, North County must 'allege the substance of its relevant terms.'" (*Id.*)

The Court finds Verizon has not sufficiently pled the contract to state a claim for relief for breach of contract. Although Verizon contends the contract is subject to a confidentiality provision and this Court has previously denied an ex parte application to file the contract under seal, Verizon

has not explained why it cannot plead, among other things, the nature of the contract, dates pertinent to the contract, and other relevant terms that would put North County on notice of the basis of COUNT V. Verizon has not shown, either in the Motion or the ex parte application it previously filed with this Court on April 8, 2009 (Docket No. 25), that the confidentiality provision in the contract precludes Verizon from doing this.

Accordingly, the Court **GRANTS** the Motion as to COUNT V. COUNT V is dismissed without prejudice.

**6. *COUNT VI: Declaratory Relief***

Verizon seeks a judgment declaring "it need not pay any currently unpaid invoices submitted by NCC to Verizon, purporting to represent switched access charges for which Verizon has no duty to pay." (FACC, ¶ 78.) Similar to COUNT III and COUNT IV, COUNT VI is based, at least in part, on service North County allegedly provides to chat-line providers. (FACC, pg. 15.) Verizon alleges these chat-line provides are not end-users and service does not terminate with them for purposes of charging switched access fees. (*Id.*)

North County moves to dismiss on the grounds that declaratory relief is a remedy and not an independent cause of action. Section 2201 of title 28 of the United States Court provides "In a case of actual controversy... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Court have consistently held that Section 2201 "cannot be used to create federal jurisdiction where none existed." *Public Service Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237 (1952); *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1172 (9th Cir. 2002) (internal citation omitted); *McCorkle v. First Pennsylvania Banking & Trust Co.*, 459 F.2d 243, 250 (4th Cir. 1972). The Declaratory Judgment Act "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wycoff*, 344 U.S. at 241. To avail itself of the Declaratory Judgment Act, the claimant must show a justiciable controversy exists, and the controversy must be definite and concrete, touching the legal relations of the parties having adverse legal interests. (*Id.* at 2442; *see also Badgley*, 309 F.3d at 1172.)

Because this Court finds that Verizon sufficiently pleads a claim for relief based on North County's alleged service to chat-line providers, here too, the Court finds a justiciable controversy exists affecting the legal rights between Verizon and North County. Accordingly, the Motion is **DENIED** as to COUNT VI.

**MOTION FOR DEFINITE STATEMENT**

**(FRCP 12(e))**

FRCP 12(e) provides that if a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be expected to frame a response, the party may move for a more definite statement. Fed.R.Civ.P. 12(e). A Rule 12(e) motion must attack the unintelligibility of a pleading, not merely the lack of detail. *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1461 (C.D. Cal. 1996). Thus, a Rule 12(e) motion fails where the complaint is specific enough to apprise the defendant of the substance of the claim being asserted. (*Id.*)

Here, in light of the Court's dismissal of COUNT V under FRCP 12(b)(6), the Court finds that North County's Rule 12(e) motion is **MOOT** as to COUNT V.

With respect to COUNTS I, II, III, IV and VI, North County fails to explain how the allegations supporting these claims are so vague and ambiguous that it cannot prepare a response. Accordingly, North County's Rule 12(e) motion is **DENIED** as to COUNTS I, II, III, IV and VI.

**CONCLUSION**

In light of the above, North County's Motion is hereby **DENIED IN PART AND GRANTED IN PART**. Dismissal is **DENIED** as to COUNTS I, II, III, IV and VI; dismissal is **GRANTED** as to COUNT V, without prejudice.

**IT IS SO ORDERED.**

Dated: 2/08/2010

Hon. Roger T. Benitez
United States District Judge