FILED

11 JAN 19 AM 9:41

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH COUNTY COMMUNICATIONS CORPORATION, a California corporation, <br><br> Plaintiff/Counter-Defendant, <br><br> vs. <br><br> VERIZON GLOBAL NETWORKS, INC., a Delaware corporation; MCI COMMUNICATIONS SERVICES, INC., dba VERIZON BUSINESS, a Delaware corporation; and MCIMETRO ACCESS TRANSMISSION SERVICES LLC, a Delaware limited liability company, <br><br> Defendants/Counter-Claimants. | CASE NO. 08-CV-1518 BEN (WMc) <br><br> ORDER DENYING MOTION TO STAY <br><br> [Docket No. 100] |

North County Communications Corporation ("NCC") seeks a six-month stay to await Federal Communications Commission ("FCC") rulemaking. NCC asserts that the FCC will soon issue regulations to address activities in which NCC allegedly took part and upon which Defendants Verizon Global Networks, Inc., MCI Communications Services, Inc., and MCIMETRO Access Transmission Services LLC ("Defendants") base some of their counterclaims. Defendants oppose the motion. The Court has received and reviewed all of the parties' submissions on this motion as well as the entire record in this case.

For the reasons discussed below, the motion is **DENIED**.

## I. BACKGROUND

NCC filed suit seeking payment for telecommunications services provided to Defendants. NCC is a local telephone company or, in industry terms, a competitive local exchange carrier ("CLEC"). Second Am. Compl. (Docket No. 47) ¶ 10. CLECs control some of the local networks and equipment that long-distance telephone companies (or interexchange carriers, "IXCs") like Defendants must access to begin and end long-distance telephone calls. *Id.* ¶¶ 12 & 14–15; Second Am. Countercl. (Docket No. 65) ¶ 2. In exchange for providing this "switched access service," NCC imposes an "access charge." Second Am. Compl. ¶ 20. This charge is based upon a "tariff"or a published rate which NCC files with government regulators – the FCC, for interstate calls, and state public utilities commissions, for intrastate calls. *Id.* ¶¶ 24–25. The gravamen of NCC's suit is the allegation that Defendants have not paid NCC's access charges since August 2006. *Id.* ¶ 29. NCC now seeks to collect more than $1,300,000. *Id.* ¶ 30.

For their part, Defendants aver that they owe no such payments, for a number of reasons. Second Am. Countercl. ¶ 1. Defendants claim that NCC entered into arrangements with telephone "chat-line providers" to inflate (or "pump") long-distance traffic flowing across Defendants' systems and ending in NCC's local networks so that NCC can increase the charges billed. *Id.* ¶ 4. According to Defendants, government regulators do not authorize access charges for such calls. *Id.* Moreover, Defendants claim that they do not owe payment because: (1) NCC's tariff was unlawfully high, *id.* ¶ 23; (2) collecting payment from Defendants violates the terms of a contract to which NCC is a party and Defendants are intended beneficiaries, *id.* ¶¶ 44–48; and (3) NCC did not have the necessary authorization to assess tariffs against Defendants in West Virginia. *Id.* ¶ 52. NCC denies these allegations in their entirety and disagrees with Defendants' interpretation of FCC and state public utilities regulations. Ans. to Second Am. Countercl. (Docket No. 76).

The parties to this action – which is already more than two years old – are rapidly approaching deadlines to close discovery as well as to file any pretrial motions. A mandatory settlement conference has been scheduled for April 6, 2011. The final pretrial conference is set for June 6, 2011. Am. Order Regulating Disc. & Other Pretrial Proceedings (Docket No. 97).

## II. LEGAL STANDARDS FOR MOTIONS TO STAY

The Court "has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962). But district courts may not exercise this power if it would result in undue delay. *Dependable Highway Exp., Inc. v. Navigators Ins. Co.,* 498 F.3d 1059, 1066 (9th Cir. 2007); *see also Leyva v. Certified Grocers of Cal., Ltd.,* 593 F.2d 857, 864 (9th Cir. 1979) ("[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time"). Nor may a stay be indefinite in nature. *Dependable Highway,* 498 F.3d at 1066.

Even a limited stay may not issue until the Court weighs competing interests, including

> the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*CMAX,* 300 F.2d at 268 (citing *Landis v. N. American Co.,* 299 U.S. 248, 254–255 (1936)). NCC bears the burden of proving that a stay is warranted. *Clinton v. Jones,* 520 U.S. 681, 708 (1997) (citing *Landis,* 299 U.S. at 255).

## III. DISCUSSION

Here, the Court finds that a six-month stay will unduly delay the action without any countervailing assurance that the FCC will simplify the issues before the proposed stay expires. Nor does consideration of the ordinary hardships attendant upon litigation justify a stay.

**A. In light of the FCC's uncertain timetable, a stay would impose undue delay without serving the orderly course of justice.**

NCC urges that a stay to await FCC rulemaking serves the orderly course of justice because the FCC may simplify some issues before the Court. NCC Mem. ISO Stay at 4 & 7. NCC further argues that FCC action is imminent, pointing to two district court referrals and two rulemaking proceedings which may generate orders and regulations relevant to this action. Specifically, NCC cites referrals from *All American Tel. Co. v. AT&T, Inc.,* No. 07-CV-861 (S.D.N.Y. filed Feb. 5, 2007), and *Qwest Commc'ns Co. v. Tekstar Commc'ns, Inc.,* No. 10-CV-490 (D. Minn. filed Feb.

19, 2010), and the FCC rulemaking proceedings, "Establishing Just and Reasonable Rates for Local Exchange Carriers," 72 Fed. Reg. 64179 (Nov. 15, 2007), and "Developing a Unified Intercarrier Compensation Regime," 66 Fed. Reg. 28410 (May 23, 2001). NCC Mem. ISO Stay (Docket No. 100) at 3–4.

While these proceedings may shed light upon legal questions in this case,[1] none of them have a certain resolution date. The two rulemaking proceedings began well before this suit was instituted.[2] Yet NCC cites no evidence – and the Court could find none – that the FCC will issue relevant rules therefrom by August 2011. *See, e.g.,* FCC, "Unified Agenda of Fed. Regulatory & Deregulatory Actions – Fall 2010," 75 Fed. Reg. 79877 (Dec. 20, 2010) (noting that the next action on "Establishing Just and Reasonable Rates for Local Exchange Carriers" is, as yet, "undetermined"). Similarly, although the *All American* and *Qwest* courts referred matters to the FCC in January and July 2010, respectively,[3] there is no indication that the FCC will resolve them in the next six months. NCC concedes as much. NCC Mem. ISO Stay at 7:20–23.

Moreover, as the Court noted in a prior order, resolution of Defendants' counterclaims call upon the conventional experience of this Court and do not require resort to the FCC, in the first instance. Order Denying in Part & Granting in Part Pl.'s Mot. to Dismiss First Am. Countercl. (Docket No. 62) at 3.

In light of the FCC's uncertain timetable and the Court's ability to resolve the claims in this proceeding itself, the Court declines to delay further a case in which the discovery and pretrial

---

[1] *See* Notice of Proposed Rulemaking ("NPRM"), "Establishing Just and Reasonable Rates," 72 Fed. Reg. at 64180 (noting that the FCC is reviewing CLEC tariffed rates to determine whether rates are just and reasonable in light of induced access demand by "chat lines, conference bridges, or other similar high call volume operations"); Am. Compl. ¶¶ 37–72 & Am. Countercl. ¶¶ 22–24, *All American Tel. Co.* (No. 07-CV-861) (alleging claims for nonpayment of access charges and counterclaims of unlawful traffic-pumping); Compl. ¶ 2, *Qwest Commc'ns* (No. 10-CV-490) (IXC alleging claims against CLECs for conspiring to "drive high volumes of long distance traffic" through CLECs' rural exchanges to inflate access charges).

[2] Indeed, "Developing a Unified Regime" has been pending for over 9 years. 66 Fed. Reg. 28410.

[3] *See* Mem. & Order re: Mot. to Remand to FCC, *All American Tel. Co.* (No. 07-CV-861) (referring matters to the FCC on Jan. 19, 2010); Mem. & Order, *Qwest Commc'ns* (No. 10-CV-490) (referring matters to the FCC on July 12, 2010).

1 | deadlines have already been continued or to impose an open-ended stay upon the parties.

2 | **B.     The ordinary hardships attendant upon litigation do not warrant a stay.**

Finally, NCC insists that proceeding without further FCC input may result in hardship for both parties. NCC Reply Br. (Docket No. 105) at 2. However, as the *Lockyer v. Mirant* court noted, the ordinary hardships attendant upon litigation do not constitute sufficient justification for a stay. 398 F.3d 1098, 1112 (9th Cir. 2005) ("being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity'").

## IV. CONCLUSION

Accordingly, for all of the foregoing reasons, NCC's motion to stay is **DENIED**.

**IT IS SO ORDERED.**

Dated:   January 18, 2011

THE HONORABLE ROGER T. BENITEZ
UNITED STATES DISTRICT JUDGE